## BURLINGTON NORTHERN RAILROAD COM-PANY and Burlington Northern Dock Corporation, Plaintiff-Appellants,

### v.

## CITY OF SUPERIOR, Wisconsin, Defendant-Respondent-Petitioner.

Supreme Court

*No. 88–1794. Argued October 30, 1990.—Decided January 22, 1991.*

(Also reported in 464 N.W.2d 643.)

434

For the defendant-respondent-petitioner there were briefs by *James F. Lorimer, Bonnie A. Wendorff* and *Boardman, Suhr, Curry & Field,* Superior and oral argument by *Mr. Lorimer.*

For the plaintiffs-appellants there was a brief by *Robert A. Schnur, Ellen M. Pokrass* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Mr. Schnur.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Burlington Northern Railroad Co. v. City of Superior, Wisconsin,* 153 Wis. 2d 206, 450 N.W.2d 486 (Ct. App. 1989), reversing an order of the circuit court for Douglas County, Douglas S. Moodie, Reserve Judge. The circuit court ordered the City of Superior to pay postjudgment interest at the annual rate of 5 percent, pursuant to sec. 74.73(1r) Stats. 1985–86, on a judgment ordering a refund of taxes collected under a statute this court declared unconstitutional. See *Burlington Northern,*

*Inc. v. City of Superior,* 131 Wis. 2d 564, 388 N.W.2d 916 (1986), *cert. denied,* 479 U.S. 1034 (1987). The court of appeals reversed the order, holding that the City of Superior owes postjudgment interest at the annual rate of 12 percent, pursuant to sec. 815.05(8), Stats. 1985–86.[1]

The issue of law on review is whether the annual rate of postjudgment interest on a judgment against a city for repayment of taxes collected under an unconstitutional statute is 5 percent under sec. 138.04, Stats. 1985–86,[2] or 12 percent under sec. 815.05(8), Stats. 1985–86.[3] We affirm the decision of the court of appeals and hold that the City owes postjudgment interest at the annual rate of 12 percent.

The court of appeals applied sec. 815.05(8) in this case, reasoning that the section's declaration that "every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year" unambiguously includes every judgment and therefore includes the judgment in the case at bar. 153 Wis. 2d at 210.[4] The City of Superior argues that the

---

[1]Section 815.05(8), Stats. 1985–86, reads:

Except as provided in s. 807.01(4), every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year on the amount recovered from the date of the entry thereof until paid.

[2]Section 138.04, Stats. 1985–86, reads, in part:

**Legal rate.** The rate of interest upon the loan or forbearance of any money, . . . shall be $5 upon the $100 for one year and according to the rate for a greater or less sum or for a longer or shorter time . . ..

[3]This case poses a question of statutory interpretation, a question of law, that is determined *de novo* by this court, without deference to the circuit court or the court of appeals.

[4]Although this provision might appear on its face to apply

word *every* in sec. 815.05(8) does not really mean *every* judgment and that sec. 815.05(8) does not govern *every* judgment for the recovery of money.[5] For example, asserts the City, sec. 32.05(11)(b), Stats. 1987–88, mandates that the legal rate of interest be used if a jury verdict exceeds the basic award in a condemnation proceeding. Obviously, there is merit in Superior's contention that sec. 815.05(8) does not govern *every* judgment for the recovery of money.

From its premise that sec. 815.05(8) does not govern every judgment for the recovery of money, the City of Superior argues that the court must look to sec. 66.09(1) which governs judgments for recovery of money against governmental subdivisions to determine whether sec. 815.05(8) with its 12 percent interest rate or sec. 138.04 with its 5 percent legal rate applies to judgments for recovery of money against the city. The City of Superior contends that sec. 66.09 directs the city to pay interest on a judgment and that the words *with interest* in sec. 66.09(1) would be mere surplusage if sec. 815.05(8) applied to every judgment, including a judgment against

only to judgments collected by executions, this court has held that it applies to judgments collected without execution. *Jones v. Jenkins,* 88 Wis. 2d 712, 277 N.W.2d 815 (1979).

[5]The word *every* appeared in the forerunner of sec. 815.05(8), Stats. 1987–88, over one hundred years ago. See sec. 2969, sub. 8, R.S. 1878, which reads: "It shall be lawful to direct in every execution upon a judgment for the recovery of money, in whole or in part, the collection of interest on the amount recovered, from the date of the rendition thereof until such amount be paid." See *Booth v. Abelman,* 20 Wis. 602 (1866), allowing interest on a judgment in an action of tort in the United States courts. See Revisor's Note, sec. 2969, 1883 Supp. to 1878 Rev. Stat.; Interpretive Commentary (1955), sec. 815.05, West's Wis. Stats. Ann., p. 354 (1977).

437

a city. Section 66.09, Stats. 1985–86, provides in part as follows:

> **Judgments against municipalities, etc.**
> **(1)** When a final judgment for the payment of money shall be recovered against a [city] . . .. The amount due, with costs and interest to the time when the money will be available for payment, . . . shall, when received, be paid to satisfy the judgment . . ..

The city's "surplusage argument" is not persuasive. When sec. 66.09 was enacted there apparently was some question whether interest could be collected on a judgment against a municipality unless a statute expressly allowed interest. *Schlesinger v. State,* 195 Wis. 366, 368, 218 N.W. 440 (1928); *Associated Hospital Service, Inc. v. City of Milwaukee,* 18 Wis. 2d 183, 192, 118 N.W.2d 96 (1962); Note, *Taxation—Recovery of Interest on Illegal Taxes,* 6 Wis. L. Rev 121 (19—). Thus the language in sec. 66.09 expressly allowing interest does not necessarily duplicate sec. 815.05(8), which provides generally for interest on judgments. If sec. 66.09(1) did not expressly allow for interest, a municipal defendant might argue that no postjudgment interest is available against governmental subdivisions. In this context, the reference to interest in sec. 66.09 may have been intended to remove any doubt about whether interest was allowable.

While sec. 66.09(1) provides for interest on a judgment against a city, it does not establish the applicable rate of interest. The City asserts that sec. 66.09(1) must be read along with sec. 138.04, which establishes the legal rate of interest at 5 percent. The City's conclusion is based on its interpretation of the legislative history of secs. 66.09(1) and 815.05(8).

The City's interpretation of the legislative history can be summarized briefly as follows: Section 66.09(1)

438

was adopted in 1921 as a compilation of several statutory provisions governing the collection of judgments against governmental subdivisions.[6] At least one of the provisions governing judgments against governmental subdivisions that became part of sec. 66.09(1) was part of ch. 130, the forerunner of ch. 815. The City asserts that had the legislature intended sec. 66.09 to be supplemented by ch. 130 (now ch. 815) it would have been more logical for the legislature to integrate sec. 66.09 into ch. 130 than to remove various provisions from ch. 130 to form sec. 66.09. The City concludes that the legislative history indicates a legislative intent to make sec. 66.09(1) separate and distinct from ch. 130, that is, from the present sec. 815.05(8), and to sever any connections between the two statutory provisions. It follows, argues the City, that because the legislature severed the connection between the two statutes, this court should not now import the interest provisions of sec. 815.05(8) into a judgment against a city under sec. 66.09(1).

Further, the City argues that when sec. 66.09(1) was enacted the legislature must have contemplated that the rate of interest applicable to sec. 66.09(1) was the legal rate of interest because that was the only applicable interest rate in the statutes. The only statute contemporaneous with sec. 66.09(1) in 1921 specifying an interest rate was sec. 1688, Stats. 1919, one of the predecessors to sec. 138.04 that establishes the legal rate of interest. The

[6]Section 82, ch. 396, Laws of 1921. Prior to the adoption of 66.09(1) in 1921, several laws addressed different governmental bodies' payment of postjudgment interest. *See* secs. 60.65, 61.62, 929, 2965m, and 3038m, Stats. 1919. The forerunners to these sections similarly provided for postjudgment interest against municipalities. *See* Laws of 1872, ch. 151, sec. 1 (governing incorporated villages); Laws of 1863, ch. 155, sec. 121 (governing school districts); Laws of 1857, ch. 30, sec. 2 (governing towns).

City contends that the legislature obviously intended sec. 66.09(1) to be governed by the only statutory provision in existence in 1921 that could be applicable, namely, the provision establishing the legal rate of interest. Furthermore, the City argues that the legislature could not have intended the interest authorized in sec. 66.09(1) to be determined by reference to the forerunner of sec. 815.05(8) because the latter section was silent about the rate of interest when sec. 66.09(1) was enacted.[7] Not until 1971 did the legislature establish a postjudgment interest rate for recovery of money judgments.[8] Accordingly, urges the City, the legislature must have intended the interest authorized under sec. 66.09(1) to be determined by sec. 138.04, the statutory provision establishing legal rate of interest.

While the City's interpretation of the legislative history is a possible interpretation, it is not the only interpretation or the most reasonable one. Because sec. 66.09 does not specify a rate of interest, sec. 66.09 must necessarily be interpreted along with another statute that establishes an interest rate. The 1921 consolidation of the various statutory provisions governing judgments against municipalities is not compelling evidence, as the City contends, of a legislative intent to sever all relations between sec. 66.09 and sec. 815.05(8). The legislative history of sec. 66.09(1) tells us only that the legislature intended that sec. 66.09 consolidate a number of sections

[7]Section 2969(8), Stats. 1921, the forerunner of sec. 815.05(8), provided for the collection of postjudgment interest in "every execution" but did not set forth the interest rate. Apparently both the new sec. 66.09(1) and sec. 2969, Stats. 1921, were governed by the legal rate of interest.

[8]Laws of 1971, ch. 141, amending sec. 272.05(8), Stats. 1971. See Revisors' Note to sec. 66.09, 1921, 1970 Annot. Stats. p. 523.

dealing with municipalities in one section.[9]

The most reasonable interpretation of the 1971 amendment to sec. 815.05(8) that expressly specifies the interest rate after judgment is that the legislature intended sec. 815.05(8) to reach every judgment for the payment of money, unless another statute expressly specified a different interest rate. This interpretation comports with the language of secs. 66.09(1) and 815.05(8) and the legislative history. This interpretation is the one that lawyer and nonlawyer readers of secs. 66.09(1) and 815.05(8) would give on a careful reading of the statutes. A reader of statutes should ordinarily be able to rely on the words of the statute without doing research into legislative history. Even if the reader did explore the legislative history of the statutes involved in this case, the history would lead the reader to the same result as a reading of the statute.

The City's final argument in connection with sec. 66.09 is that this court has previously held that unless a statute specifically prescribes a different rate, the rate to be applied to governmental judgment debtors is the legal rate established by sec. 138.04. The City relies on *Boldt v. State,* 101 Wis. 2d 566, 583, 305 N.W.2d 133, *cert. denied* 454 U.S. 973 (1981), and *City of Milwaukee v. Firemen Relief Ass'n of Milwaukee,* 42 Wis. 2d 23, 39, 165 N.W.2d 384 (1969). We agree with the circuit court and the court of appeals that these cases are not helpful in answering the question presented in the case at bar. Neither the *Boldt* decision nor the briefs filed in the *Boldt* case discuss the issue of interest at length or refer to sec. 815.05(8). The *Milwaukee Firemen Relief* case preceded the enactment of sec. 815.05(8) specifying an

---

[9]The purpose of the change is explained in part "to assemble in said chapter as consolidated pertinent provisions from other chapters of the statutes . . .." Ch. 396, Laws of 1921.

interest rate other than the legal rate of interest and is therefore not applicable here.

On analyzing secs. 66.09(1), 138.04, and 815.05(8), we conclude that sec. 815.05(8) establishes the postjudgment interest rate for every judgment for which the legislature has not explicitly provided a different postjudgment interest rate.

We turn to the City's alternative argument that sec. 74.73(1r), Stats. 1985–86, providing for interest at the legal rate governs this case. Section 74.73(1r), Stats. 1985–86, provides that a claimant recovering tax money unlawfully levied and collected may recover interest at the legal rate computed from the date of filing of the claim. Section 74.73(1r), Stats. 1985–86, provides in relevant part:

> If it appears that the tax for which such claim was filed . . . is unlawful [and] any town, city or village fails or refuses to allow the claim [for refund of any unlawful tax], the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate computed from the date of filing the claim.

The phrase unlawful tax used in sec. 74.73(1r) has a limited and statutorily defined meaning. The phrase means, according to sec. 74.73(1g),[10] a tax in respect to which one or more errors described by subsections (1) to (6) of sec. 74.135 have occurred. Subsections (1) and (6) of sec. 74.135 do not include as one of the specified errors a tax collected under a statute later declared unconstitu-

---

[10]Section 74.73(1g), Stats. 1985–86, was adopted in 1983. 1983 Wis. Act 225.

tional.[11] The City of Superior argues that the collection of the unconstitutional tax in this case amounts to a collection of a tax on exempt property and thus falls within subsection (3) of sec. 74.135. According to the City, sec. 74.135(3) applies equally to property that is constitutionally exempt from taxes and property that is statutorily exempt from taxes. We are not persuaded by this argument.

The court of appeals rejected the City's argument that sec. 74.73(1r) applies to unconstitutional taxes. The court of appeals first held that an unconstitutional tax is void *ab initio*. The court of appeals then examined *Family Hospital Nursing Home, Inc. v. City of Milwaukee,* 78 Wis. 2d 312, 254 N.W.2d 268 (1977), which established the rule that sec. 74.73(1r) does not apply to taxes that are void *ab initio*. Because taxes collected pursuant to a statute that is unconstitutional are void *ab initio,* the court of appeals held that 74.73(1r) does not apply in this case. See *Burlington Northern, Inc. v. City of Superior,* 149 Wis. 2d 190, 203–06, 441 N.W.2d 234 (Ct. App. 1989), petition for review denied by Wisconsin Supreme Court, May 2, 1989 (prejudgment interest).

---

[11]Section 74.135(1) to (6), Stats. 1985–86, lists the following errors that make a tax unlawful:

(1)   When a clerical error has been made in the description of the property or in the extension of the tax.

(2)   When improvements on lots were considered in making the assessment roll, where the improvements did not exist at the time fixed by law for making the assessment.

(3)   When the property is exempt by law from taxation.

(4)   When a person has been assessed the same year for the same property in more than one ward or place.

(5)   When a double assessment has been made.

(6)   When a palpable error has been made in the assessment, in which case the error may be corrected.

Although sec. 74.73 has been amended several times after *Family Hospital* and the void *ab initio* analysis may be of limited value, we agree with the result the court of appeals reached.

The phrase "property exempt by law from taxation" used in sec. 74.135(3) ordinarily refers to statutes expressly declaring certain property exempt from taxation. The phrase generally does not refer to property not taxable because the statute is unconstitutional. After *Family Hospital,* which involved property statutorily exempt from taxation and a limitations provision, the 1983 legislature adopted 74.73(1g), thereby providing that sec. 74.73(1r) governs exempt property. The legislature could have provided that taxes collected under a statute declared unconstitutional are unlawful taxes under sec. 74.73(1r). It did not.

The City of Superior asserts that it does not make sense for a governmental subdivision to pay interest at 12 percent when it collects a tax pursuant to a state statute that it did not adopt and that is found unconstitutional, while the same entity would pay only 5 percent interest under sec. 74.73(1r) if it had been assessing taxes against property which is expressly exempt under a statutory provision. While the City's policy arguments about 74.73(1r) and about the fiscal concerns of municipalities in paying substantial sums of interest have persuasive force, they should be made to the legislature, not the court.

For the reasons set forth we conclude that the annual rate of postjudgment interest in this case is governed by sec. 815.05(8), Stats. 1985–86, and we affirm the decision of the court of appeals.

444

*By the Court.*—The decision of the court of appeals is affirmed.