Thomas P. MURPHY, Petitioner-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

NORTHWEST HARDWOODS, INC., WEYERHAEUSER COMPANY, Defendant.

Court of Appeals

*No. 93–2306. Submitted on briefs February 22, 1994.—Decided March 15, 1994.*

(Also reported in 515 N.W.2d 487.)

206

For the defendant-appellant the cause was submitted on the briefs of *William Cassel* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Jacqueline E. Boynton* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Labor and Industry Review Commission appeals a trial court order reversing its determination that Thomas Murphy must meet the requalification requirements of § 108.04(7)(a), STATS., before receiving unemployment benefits because he had voluntarily terminated his employment without good cause, even though he subsequently was enrolled full-time in an approved training program. LIRC contends that the trial court erred by (1) giving no weight to LIRC's interpretation of § 108.04(16)(b), STATS., and (2) invoking equitable doctrines in making its decision. LIRC argues that its interpretation and application of § 108.04(16)(b) are entitled to great weight by virtue of LIRC's experience, technical competence and specialized knowledge in interpreting and applying the provisions of ch. 108. LIRC further argues that § 108.04(16)(b) is ambiguous and that LIRC's interpretation is reasonable and consistent with the statute's language, history and purpose. Finally, LIRC argues that the trial court was unauthorized to grant an equitable remedy because the rights and remedies are statutory and ch. 108 provides no equitable remedy.

We conclude that LIRC's interpretation and application of § 108.04(16)(b) are entitled to great weight. However, we further conclude that LIRC's interpretation is unreasonable and inconsistent with the statute's language, history and purpose. We therefore affirm the order without addressing the other issue LIRC raises.

The facts giving rise to this controversy are undisputed and straightforward. Murphy worked for Northwest Hardwoods from January 1990 to May 1991, when he was laid off because Northwest permanently shut down the plant. Murphy obtained dislocated worker status because of the circumstances surrounding his loss of employment, and thus he was entitled to participate in retraining under the Job Training Partnership Act (JTPA). Murphy originally applied for JTPA funding in June 1991, but funding was not approved until December 1991, due to a shortage of funds. During the interim, he accepted employment at Fruit Acres as a part-time apple picker and attended Western Wisconsin Technical College on a part-time basis in an associate degree program. Murphy enrolled full-time at WWTC in August 1991.

In September 1991, Murphy voluntarily quit his job at Fruit Acres because he was unhappy with the method of picking apples. LIRC determined that the apple-picking method was not so unreasonable as to justify Murphy's resignation and that the wage was not substantially less favorable than the prevailing apple-picking wage. Thus, LIRC concluded that Murphy was ineligible to receive unemployment benefits until he requalified under § 108.04(7)(a), STATS., by earning at least $684 in employment covered by unemployment compensation law. Murphy did not appeal this decision to the circuit court.

Murphy subsequently obtained part-time employment with Olsten Temporary Services and with Leidel's, another apple orchard. During this time, Murphy continued his full-time enrollment at WWTC. Although his employment in these two part-time jobs totaled an amount sufficient to meet the requalification requirement, the Department of Industry, Labor and Human Relations determined that his earnings from Leidel's were not subject to unemployment compensation and therefore did not count toward his requalification earnings.

Murphy appealed DILHR's decision to LIRC, asserting that he was not subject to the requalification requirements of § 108.04(7)(a), STATS., because he was a dislocated worker enrolled full-time in a JTPA program at WWTC. Murphy was approved for JTPA funding in November, conditioned on its availability. In December 1991, Murphy was informed that funding was available and he first received JTPA assistance in January 1992. Prior to that time Murphy paid his college tuition himself.

Administrative Law Judge Donald Doody held a hearing in January 1992 to determine whether Murphy requalified for benefits as of November 1991.[1] ALJ Doody determined that Murphy was not relieved of the requalification requirements under § 108.04(16), STATS., because he did not quit Fruit Acres to enroll in JTPA-approved training. Murphy appealed this determination to LIRC. LIRC affirmed the ALJ's determination, and concluded that Murphy was ineligible to receive unemployment benefits because he had not requalified under § 108.04(7).

---

[1] No issue is raised concerning the date of Murphy's eligibility; accordingly we do not address this issue.

Murphy appealed LIRC's decision to the trial court. The trial court concluded that LIRC's interpretation and application of § 108.04(16)(b), STATS., were entitled to no weight, because "whether an employe who is subject to requalification provisions for voluntarily quitting a part-time, seasonal job, may purge himself of the requirement through entering into approved training, based on his status as a dislocated worker . . . presents an issue of first impression [for LIRC]." The trial court concluded that LIRC's interpretation that § 108.04(16)(b) relieves an individual of the § 108.04(7) requalification requirements only if the individual quit to enroll in training, was unreasonable and inconsistent with the statute's plain language. The trial court also noted that "the equities lie in allowing Murphy to collect the unemployment compensation benefits." The trial court therefore reversed LIRC's decision.

Whether Murphy must requalify for unemployment compensation benefits under § 108.04(7)(a), STATS., involves statutory interpretation and application of the statute to undisputed facts, a question of law. While we are not bound by LIRC's statutory interpretation and application, under some circumstances we defer to LIRC's determinations. *DILHR v. LIRC*, 161 Wis. 2d 231, 246, 467 N.W.2d 545, 550 (Ct. App. 1991). Our supreme court discussed the appropriate standards of review of an agency's legal conclusions and statutory interpretation in *Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992):

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the

211

administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." *The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing."* The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. (Emphasis in original; citations omitted.)

■

LIRC contends that the trial court erred by giving no weight to LIRC's interpretation of § 108.04(16)(b), STATS., because it is charged with interpreting unemployment law and has specialized knowledge and expertise in applying unemployment law. While the trial court correctly noted that this particular fact situation is one of first impression, LIRC has been administering § 108.04(16)(b) since the statute's enactment in 1981. LIRC in the past has had numerous occasions to interpret the requalification requirements of ch. 108 and to determine the interrelationship between the state unemployment compensation provisions and various federal programs, including JTPA. These interrelationships are complex, and LIRC has special expertise and experience in determining the interrelationship between §§ 108.04(7) and 108.04(16)(b) at both the state and federal levels. Because LIRC has experience, technical competence and specialized knowledge in interpreting and applying the provisions of ch. 108, we conclude that LIRC's determination is entitled to great weight.

Section 108.04(7)(a), STATS., provides in part:

> If an employe terminates work with an employing
> unit, the employe is ineligible to receive benefits
> until 4 weeks have elapsed since the end of the week
> in which the termination occurs and the employe
> earns wages after the week in which the termina-
> tion occurs equal to at least 4 times the employe's
> weekly benefit rate ... in employment or other work
> covered by the unemployment compensation law ...

The general rule is that individuals who voluntarily
terminate employment must meet the requalification
requirements under § 108.04(7)(a) before they are eli-
gible to receive unemployment compensation benefits.
Chapter 108 defines several exceptions to this general
rule. Thus, to avoid the requalification requirement in
§ 108.04(7)(a), Murphy must fall under one of the stat-
utory exceptions to this rule.

One of the exceptions to the requalification
requirement is found in § 108.04(16)(b), STATS., which
provides in part: "The requalifying employment
requirement under [§ 108.04(7)] do[es] not apply to an
individual as a result of the individual's enrollment in
training or leaving unsuitable work to enter or con-
tinue training under 19 USC 2296." One of the
programs listed as a trade readjustment allowance in
19 U.S.C.A. § 2296(a)(5) (West Supp. 1994), is JTPA
training.

Section 108.04(16)(b), STATS., exempts an individ-
ual from the requalification requirements in two
situations: (1) "as a result of the individual's enroll-
ment in training" and (2) "[as a result of the
individual's] leaving unsuitable work to enter or con-
tinue training." LIRC previously determined that the

work at Fruit Acres was suitable, as that term is defined in § 108.04(8). Because Murphy did not appeal this prior decision, it is conclusive as the law of the case. *See Lindas v. Cady*, 175 Wis. 2d 270, 279-80, 499 N.W.2d 692, 696-97 (Ct. App. 1993). Thus, the second part of § 108.04(16)(b) does not apply to Murphy because he did not leave unsuitable work to enroll in or continue JTPA training.

LIRC interpreted the first part of § 108.04(16)(b), STATS., to relieve individuals of the requalification requirement only if they terminated employment, with or without cause, *for the purpose of enrolling in JTPA training*. LIRC also concluded that if an individual voluntarily terminates suitable employment for reasons unrelated to enrollment in JTPA training, that individual's future enrollment in JTPA training does not exempt that individual from the requalification requirements. LIRC previously determined that Murphy terminated his employment with Fruit Acres for reasons unrelated to enrollment in JTPA training. Again, because Murphy did not appeal this prior decision, it is conclusive as the law of the case. *See Lindas*, 175 Wis. 2d at 279-80, 499 N.W.2d at 696-97. Thus, under LIRC's interpretation, the first part of § 108.04(16)(b) does not apply to relieve Murphy of the requalification requirements because Murphy voluntarily terminated suitable work for reasons unrelated to JTPA training.

We will uphold LIRC's interpretation of § 108.04(16)(b), STATS., if it is reasonable, even if another interpretation is also reasonable, unless LIRC's interpretation is clearly contrary to the legislative intent. *See DILHR*, 161 Wis. 2d at 246, 467

214

N.W.2d at 550. In determining the legislature's intent, "we first look to the statutory language; if the statute's meaning is clear, we will not look outside the statute." *McMullen v. LIRC*, 148 Wis. 2d 270, 274, 434 N.W.2d 830, 832 (Ct. App. 1988). We now consider LIRC's interpretation of § 108.04(16)(b) in light of its language and its interrelationship with the requalification provisions in § 108.04(7).

We note that LIRC, in its interpretation of the first part § 108.04(16)(b), STATS., added words to the statute. Under LIRC's interpretation, the first part of the statute would read, "The requalifying employment requirement . . . do[es] not apply to an individual as a result of the individual's *terminating employment to enroll* in training . . . ." (Emphasis added.) We conclude that this interpretation is unreasonable and inconsistent with the statute's language for several reasons.

As we previously stated, the first part of § 108.04(16)(b), STATS., provides, "The requalifying employment requirement under [§ 108.04(7)] do[es] not apply to an individual as a result of the individual's *enrollment in training* . . . ." (Emphasis added.) The first part of § 108.04(16)(b) does not expressly relate to the individual's reason for terminating work, nor does it condition relief from the requalifying requirement on anything other than enrollment in approved training. In other provisions of § 108.04, the legislature specifically detailed several situations in which the requalification requirements do not apply, most of which relate to the reason the individual terminated his or her work. *See, e.g.,* § 108.04(7)(b)-(o), STATS. Additionally, the second part of § 108.04(16)(b) relates to the reason the individual terminated his or her work. If the legislature had intended to provide relief from the requalification requirements only if the indi-

215

vidual left his or her employment for the purpose of enrolling in training, it could easily have done so. We conclude that the legislature's failure to do so reflects a deliberate intent to provide relief upon an individual's enrollment in training, regardless of whether the individual left his or her work for that reason. The fact that the legislature chose in other parts of the statute to expressly condition exemption from the requalification requirements upon the individual's reasons for terminating his or her employment supports our conclusion.

Moreover, LIRC's interpretation of the first part of § 108.04(16)(b), STATS., would render the second part of the statute superfluous. If the statute read as LIRC interpreted it, to exempt an individual from the requalifying requirements if the individual terminates employment for the purpose of enrolling in approved training, the provision that exempts individuals who leave unsuitable work to enroll would be redundant. A statute should be construed so that no part of it is superfluous. *State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). Because LIRC's interpretation of the first part of § 108.04(16)(b) would render the second part superfluous, we must reject it.

Our interpretation of § 108.04(16)(b), STATS., gives effect to both parts. As we previously stated, § 108.04(16)(b) exempts an individual from the requalification requirements in two situations: (1) "as a result of the individual's enrollment in training" and (2) "[as a result of the individual's] leaving unsuitable work to enter or continue training." The difference between the two situations is the point at which the exemption takes effect. Individuals are exempted from the requalification requirements either at the time they enroll in JTPA training, under the first part of

216

§ 108.04(16)(b), or at the time they leave unsuitable work to enroll in or continue JTPA training, under the second part of § 108.04(16)(b). Thus, an individual who leaves unsuitable work is exempted from the requalification requirements at the time he or she leaves work, while all individuals who enroll in JTPA training are exempted at the time of their enrollment.

LIRC contends that its interpretation is consistent with the origin and purpose of § 108.04(16)(b), STATS. LIRC notes that § 108.04(16)(b) is derived from 19 U.S.C.A. § 2296(d) (West Supp. 1994), which provides in part, "A worker may not be determined to be ineligible or disqualified for unemployment . . . program benefits under this subpart . . . *because the individual is in [approved] training* . . . [or] because of leaving work which is not suitable to enter such training . . . ." (Emphasis added.) As in the first part of § 108.04(16)(b), the federal statute exempts individuals enrolled in approved training, regardless of whether they terminated employment for the purpose of entering such training. Thus, looking to the federal statute as the origin of § 108.04(16)(b) does not support LIRC's interpretation.

LIRC's interpretation of § 108.04(16)(b), STATS., is also inconsistent with its legislative history. When § 108.04(16)(b) was repealed and recreated in 1981, it provided in part, "Benefits may not be denied, nor does [the requalification requirement of sub. (7)] operate to deny benefits *to any otherwise eligible individual . . . because the individual is enrolled in . . . training . . . .*" (Emphasis added.) Thus, under former § 108.04(16)(b), individuals who were eligible to receive unemployment compensation benefits before they enrolled in approved training could not be denied benefits while they were enrolled in training based on their inability to meet the

requalification requirements during their enrollment. Amended § 108.04(16)(b) does not require individuals enrolled in approved training to have been otherwise eligible for benefits at the time they enrolled. The first part of current § 108.04(16)(b) now applies "as a result of the individual's enrollment in . . . training . . . ." This change in language indicates the legislature's intent to broaden the exemption.

■

Moreover, we note that § 108.04(16)(b), STATS., has been amended and/or recreated several times since it was first enacted. Each time, despite the fact that other portions of the statutes providing exemptions from the requalification requirements condition the exemption upon certain reasons for leaving employment, the legislature has chosen not to include such a requirement once the individual has enrolled in JTPA training. When the legislature enacts or amends a statute, it is presumed to have full knowledge of existing statutes. *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 646, 436 N.W.2d 594, 597 (1989). This legislative history of § 108.04(16)(b) further indicates a deliberate intent to provide relief upon an individual's enrollment in training, regardless of whether the individual left his or her work for that reason.

Similarly, LIRC's interpretation of § 108.04(16)(b), STATS., is inconsistent with its purpose. The legislature stated the policies behind the unemployment statutes in § 108.01. One policy is that "[t]he economic burdens resulting from unemployment should be . . . decreased and prevented as far as possible. . . . . Education and retraining of workers during their unemployment should be encouraged." Section 108.01(2). Section 108.04(16)(b) should thus be construed to provide,

218

rather than deny, unemployment compensation benefits to an individual enrolled in approved training.

Here, LIRC's interpretation would penalize Murphy for seeking other employment after Northwest shut down the plant and after he was told in June 1991 that he could not be approved for JTPA funding until October because of a shortage of funds. If Murphy had been able to enroll in JTPA training when he first applied in June 1991, the requalification requirements would not have applied to him. Murphy sought other employment rather than sitting idle until October 1991 and left that employment without stating he left to enroll in JTPA training, even though he was enrolled full time at WWTC at that time. Essentially, Murphy is being denied unemployment compensation benefits because he was unable to enroll in JTPA training, due to a lack of funds, immediately after Northwest shut down its plant. This result is inconsistent with the policies expressed in § 108.01, STATS., and should be avoided.

In sum, although LIRC's interpretation of § 108.04(16)(b), STATS., is entitled to great weight, we must reject that interpretation because it is inconsistent with the statute's language, origin and purpose. Because the resolution of this issue is dispositive of the appeal, we need not address the other issues the parties raise. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

*By the Court.*—Order affirmed.