Thomas CALAWAY, and Sandra Calaway, Plaintiffs-
Appellants-Cross Respondents, †

v.

BROWN COUNTY, a municipal corporation of the State of
Wisconsin, Defendant-Respondent-Cross Appellant.

Court of Appeals

*No. 95–2337. Submitted on briefs May 6, 1996.—Decided June
11, 1996.*

(Also reported in 553 N.W.2d 809.)

†Petition to review denied.

738

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Benjamin Southwick* of Richland Center.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the brief of *Donald R. Zuidmulder* of *Zuidmulder, Appel & Gammeltoft* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Thomas and Sandra Calaway appeal a judgment awarding Brown County $11,844.85, the difference between the jury's verdict in the Calaways' condemnation case and the basic award they received from the County before trial. They also appeal an order denying their motion for a new trial. The Calaways argue the trial court erroneously exercised its discretion when it (1) excluded evidence of a comparable sale; (2) excluded evidence relating to market events that took place after the day of taking; and (3) allowed the State's real estate appraisal expert to testify. The County cross-appeals, arguing (1) it is entitled to costs and disbursements; (2) it should have received twelve percent rather than five percent postjudgment interest; and (3) it should be reimbursed for an undisclosed special assessment on the condemned property. We conclude the trial court reasonably exercised its discretion when it excluded and admitted evidence at trial and, therefore, the Calaways are not entitled to a new trial. However, we reverse the trial court's decision to deny the County twelve percent postjudgment interest and reimbursement for the special assessment it paid. We also reverse the trial court's denial of costs

because it did not articulate the reasons for its exercise of discretion. We remand the case with directions that the trial court order the Calaways to reimburse the County for the special assessment and articulate the reasons for its exercise of discretion on the issue of whether to award costs to the County.

## I. BACKGROUND

The background facts are undisputed; we will recite additional facts as necessary. The Calaways owned 130.1 acres of relatively flat, nearly vacant land. In 1990 the County exercised its eminent domain power to acquire 72.3 acres of the Calaways' real estate in accordance with the title acquisition procedure set forth in § 32.05, STATS., to expand the Austin Straubel Airport. The County gave the Calaways a basic award of $460,000. The Calaways appealed the basic award to a county condemnation commission. Although the commission's decision is not in the record, it appears the Calaways were dissatisfied with the commission's award because they appealed to the circuit court and a trial ensued.

The jury determined that the difference between the before-taking value and the after-taking value was $448,155.15. The trial court denied the Calaways' motions to set aside the jury verdict and for a new trial, and entered judgment in favor of the County for the difference between the basic award it had paid the Calaways and the jury award. The Calaways now appeal the judgment and the order denying their motion for a new trial. The County's cross-appeal concerns the trial court's order denying the County costs, twelve percent postjudgment interest and reimbursement for a special assessment.

## II. THE CALAWAYS' APPEAL

The Calaways argue the trial court erroneously exercised its discretion twelve times when it excluded testimony or written evidence, and when it admitted testimony from the County's expert appraiser. The admission of evidence touching upon the value of property appropriated in condemnation cases must be left largely to the trial judge's discretion. *Leathem Smith Lodge, Inc. v. State*, 94 Wis. 2d 406, 409, 288 N.W.2d 808, 810 (1980) (quoting 5 Nichols, *Eminent Domain*, § 18.1[3] at 18-38-40). The burden of showing an unreasonable exercise of discretion rests upon the Calaways, who object to the trial court's exclusion of their evidence and admission of the County's evidence. *See id.* at 409, 288 N.W.2d at 810.

### A. The Krueger Sale

We begin with the first item of evidence the Calaways argue should have been admitted: evidence of a comparable sale. Evidence of comparable sales is admissible on two grounds, either as independent direct evidence of the land's value, or indirectly, for the more limited purpose of showing a basis for and giving weight to the opinion of value of an expert witness. *Kamrowski v. State*, 37 Wis. 2d 195, 201-02, 155 N.W.2d 125, 129 (1967).

The general rule regarding admission of comparable sales as direct evidence of value is more restrictive than the admissibility rule when the evidence is offered only to show a basis for the opinion of an expert witness. *Id.* at 202, 155 N.W.2d at 129. When evidence of the price for which similar property has been sold is

offered as substantive proof of the value of the property under consideration, a foundation should be laid showing that the properties' locations are sufficiently near one another and that the properties are sufficiently alike as to character, situation, usability and improvements to make a true comparison. *See id.* If two pieces of land are so dissimilar as to mislead or prejudice the jury, then the comparable sale evidence is inadmissible. *See id.* at 203, 155 N.W.2d at 129.

Here, the Calaways sought to introduce evidence of a claimed comparable sale of land by a private landowner to the Oneida Tribe of Indians of Wisconsin (the "Krueger sale"). This sale occurred four and one-third years after the County acquired the Calaways' property. The Calaways argued the Krueger sale was comparable because the land was similar in size, located one-half mile south of the Calaways' property, in a similar zoning category and within the tribe's original reservation. The Calaways sought to introduce the Krueger sale apparently as both independent direct evidence of their land's value and to show a basis for and give weight to their expert witness' opinion of value. The trial court granted the County's motion in limine to prohibit the evidence.

At trial, the court explained that if a sale is not a true comparable sale, the sale may not be admitted into evidence as substantive evidence of the value of the land at issue in the trial. Ultimately, the trial court concluded that the Krueger sale was inadmissible because it was irrelevant, remote and unforeseeable at the time of the taking.

The Calaways argue that the trial court's decision reflected its conclusion that as a matter of law no comparable sale that occurs after the date of taking is admissible. We disagree with the Calaways' character-

ization of the trial court's ruling on the evidence. The trial court did not reject the evidence as per se inadmissible; rather, it simply exercised its discretion, concluding that the Krueger sale was not comparable because it was irrelevant, remote and unforeseeable.

Next, we conclude that the trial court reasonably exercised its discretion when it concluded the Krueger sale was not comparable. To determine the appropriate compensation for the partial taking of an owner's property the jury must determine the fair market value of the parcel as a whole, *immediately before the taking*, and the fair market value of the remaining parcel *immediately after the taking*. *See* comments to WIS J I-CIVIL 8100 (1994). Thus, the time that elapses before or after the taking and the alleged comparable sale is an important factor to consider.

In *Huse v. Milwaukee County Expwy. Comm'n*, 16 Wis. 2d 225, 114 N.W.2d 429 (1962), our supreme court noted that evidence of a comparable sale is generally admissible where the sale is voluntary, not too remote in point in time, or is not otherwise shown to have no probative value. *Id.* at 228, 114 N.W.2d at 430 (citing 55 A.L.R.2d 791 (1957)). Additionally, the court stated that the matter of a change of circumstances between the date of the purchase and the date of the taking may be of considerable significance in determining the admissibility of evidence of the price paid. *Id.*

In this case, the Krueger sale occurred four and one-third years after the Calaways' property was taken. The trial court noted that *Herro v. DNR*, 67 Wis. 2d 407, 424, 227 N.W.2d 456, 467 (1975), recognized that under the right circumstances, a time of up to eleven years between the date of taking and the other sale might not be too remote. *Herro* also noted that *Huse* held that a change in circumstances during the

intervening time may affect the view of what amount of time is too remote. *Herro*, 67 Wis. 2d at 424, 227 N.W.2d at 467.

Using this analysis, the trial court concluded that the Krueger sale was too remote because it occurred four and one-third years after the taking. Additionally, the trial court noted that even the Calaways' appraiser acknowledged in his deposition that at the time of the taking he was not aware nor could he have become aware of the tribe's prospective activities and future successes. The trial court noted the appraiser also testified that no other Brown County appraiser would have had such knowledge. Thus, the trial court concluded the Krueger sale was too remote from the taking to be considered a comparable sale for the purpose of determining the value of the Calaways' property at the time of the taking.

■

We agree with the trial court's analysis. Not only did the Krueger sale occur four and one-third years after the taking, the appraiser's comments suggest circumstances may have changed considerably over those four years, making the sale and the taking less comparable. *See Huse*, 16 Wis. 2d at 228, 114 N.W.2d at 430 (the matter of a change of circumstances between the date of the purchase and the date of the taking may be of considerable significance in determining the admissibility of evidence of the price paid).

Because we must search the record for support of a court's evidentiary ruling, *see State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983), we consider the County's alternative reason to sustain the trial court's ruling: evidence of the Krueger sale would have been unduly prejudicial. The County explains: "No jury could ignore the dramatic jump in value represented by

the Krueger sale. A real danger exists the jury would inappropriately reward Calaways for this subsequent—and legally irrelevant—change in market conditions."

We agree the danger of unfair prejudice would have been high. Thomas Calaway testified at trial that before the taking, he had spoken to the tribe about selling his land. If the jury also heard that the tribe bought neighboring land four and one-third years after the taking, it is likely the jury would believe the Calaways would have received the same level of compensation for their land in a sale to the tribe. The problem with such a conclusion is that the jury's role is not to determine the value of the land four and one-third years after the taking. Instead, the jury must decide the value of the land immediately before taking, *see* comments to Wɪs J I-Cɪvɪʟ 8100, although the jury may base its determination on the most advantageous use shown to exist, either at the time in question or within a reasonable time in the near future, *see* Wɪs J I-Cɪvɪʟ 8100. The future uses considered, if any, must be so reasonably probable as to affect present market value. *See id.* This means the jury would have the power to consider that the Calaways could have sold the land to the tribe, but had to determine the property's value as of 1990, not 1995. If the jury heard that the tribe was paying large sums in 1995, there is a strong possibility that the jury would erroneously use the 1995 prices to determine the land's value as of 1990.

In light of these concerns, we agree with the County that excluding the evidence was reasonable because the Krueger sale evidence would have been unfairly prejudicial to the County, whether it was

offered as evidence of actual value, or for the more limited purpose of showing a basis for an expert's opinion on value. *See Kamrowski*, 37 Wis. 2d at 202-03, 155 N.W.2d at 129-30 (some evidence offered even for the limited purpose may confuse or mislead the jury to such a degree that the trial court should in its discretion refuse to admit the evidence).

The Calaways also argue that the trial court's decision was based upon an erroneous view of the law and, therefore, constitutes an erroneous exercise of discretion. *See In re D.S.*, 142 Wis. 2d 129, 134, 416 N.W.2d 292, 294 (1987). They maintain the issue presented is whether it is proper in eminent domain valuation litigation to utilize hindsight (i.e., facts occurring or discovered after the date of taking) in valuing the condemnee's real estate as of the date of taking. Furthermore, the Calaways argue that a jury not only can but must view the condemnee's property with the benefit of facts discovered or occurring after the date of taking but before the commencement of the trial.

The Calaways cite several cases from other states that involve subsequently obtained information on the property's physical condition as it existed at the time of the taking. *See, e.g., San Diego County Water Authority v. Mireiter*, 23 Cal. Rptr.2d 455 (Cal. App. 1993) (discovery of pre-existing vernal pools may be considered to determine fair market value); *State v. Shein*, 662 A.2d 1020, 1026 (N.J. Super. A.D. 1995) (discovery of pre-existing wetlands may be considered to determine fair market value). The Calaways argue that these cases stand for the proposition that the trier of fact in eminent domain valuation litigation must be fully apprised of all facts in setting fair market value, even if those facts were not ascertained, or could not have been ascertained, until after the date of valuation.

We are not convinced *Mireiter* and *Shein* require us to reverse because these cases do not involve the subject of this appeal: admissibility of comparable sales. We are unpersuaded that the rationale of those cases should be applied in this case because a change in market value based on factors that developed after the taking is substantially different from the discovery of some inherent characteristic of the land existing but unknown at the time of the taking.

Finally, we examine the Calaways' argument that the trial court misinterpreted § 32.09, STATS., which provides in part:

> In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed:
>
> . . . .
>
> (1m) As a basis for determining value, a commission in condemnation or a court may consider the price and other terms and circumstances of any good faith sale or contract to sell and purchase comparable property.

The Calaways argue the trial court misapplied this section in two respects. First, they argue § 32.09(1m), STATS., "requires that the trier of fact be allowed to consider information about the relevant real estate market which took place after the date of taking." Second, they argue the trial court misinterpreted the phrase "a court may consider the price and other terms" as authorization for the court, rather than the jury, to conclude whether the sales are comparable. The Calaways explain that the legislature, in enacting § 32.09(1m), sought to expressly limit the trial court's discretion during jury trials to keep comparable sale information from the trier of fact. Thus, the Calaways

argue the trial court erroneously refused to admit evidence of the Krueger sale, "even though Appraiser Vogels expressly stated his opinion in the Calaways' offer of proof that the sale satisfied the requirements of section 32.09(1)."

We are not persuaded. Even if the trial court has the duty to make an initial decision to admit or exclude a comparable sale, the jury or fact finder is still charged with the task of determining the weight and effect that is to be given to the comparable sale. *See* WIS J I-CIVIL 8120 (1994).[1] Although juries are assigned this task, we disagree with the Calaways' implication that the trial court has no control over the evidence that goes before the jury. Trial courts must analyze proffered comparable sales under both case law governing comparable sales and the general rules of evidence, which allow a trial court to exclude irrelevant evidence or relevant evidence that is prejudicial, confusing, cumulative or a waste of time. *See* §§ 904.02 and 904.03, STATS. The trial court, by excluding inadmissible evidence, does not usurp the jury's power.

In sum, for the reasons discussed and in light of our complete review of the record, we conclude the trial court's decision to exclude the Krueger sale under the circumstances here did not constitute an erroneous exercise of discretion.

---

[1] WIS J I-CIVIL 8120 (1994), provides in part:

There has been received into evidence testimony as to other sales as an aid to the jury, if such it be, in determining the fair market value of the property under consideration.

In determining the weight and effect that is to be given to such other sales, you will consider all of the elements of similarity in situation and time and also all the elements of dissimilarity and determine how far such sales go to establish what was the fair market value of the property in question on the date of taking.

## B. Other Excluded Evidence

The Calaways argue the trial court erroneously exercised its discretion when it excluded eleven other items of evidence. Our review of the record convinces us the trial court reasonably exercised its discretion in each case. However, we will briefly address the evidence the Calaways sought to admit.

First, the Calaways sought to introduce evidence of negotiations with the tribe and the tribe's interest in the property that occurred before the taking. Specifically, they wanted to introduce: (1) a four million dollar option the Calaways gave the tribe that was never executed; (2) the asking price the Calaways stated to the tribe during negotiations; (3) Thomas' opinion whether he and Sandra could have sold their one-hundred-fifty-seven-acre before-taking property to the tribe; (4) Thomas' opinion whether he and Sandra could have sold their after-taking eighty-five-acre parcel to the tribe; (5) Thomas' answer to a question asking whether he had an opinion as to whether the tribe's interest in his property is something a knowledgeable buyer would have considered before buying Thomas' property; (6) the testimony of Jerry Hill, the former director of economic development for the tribe; (7) a newspaper article stating the tribe expected to earn a substantial profit in 1990; and (8) testimony from Thomas about their asking price during negotiations with the tribe and an appraisal of the land the tribe conducted during negotiations.

In each case, the trial court concluded the evidence was speculative or irrelevant and, therefore, refused its admission. We conclude the trial court reasonably exercised its discretion. Although the tribe expressed an interest in the land, the offer of proof from Jerry Hill

and Thomas' testimony demonstrate that the negotiations with the tribe were only in the preliminary stages at the time of the taking, so introducing evidence about the tribe's apparent willingness or ability to pay a specific price for the land in 1990 would be so speculative that such evidence was reasonably excluded as evidence of the land's fair market value.

The second set of evidence the Calaways sought to introduce is related to the Krueger sale: (1) an appraiser's opinion that incorporated data from the tribe's purchase of the Krueger land; (2) another appraiser's opinion of fair market value based on the Krueger sale; and (3) cross-examination testimony of the County's appraisal expert about the Krueger sale. We have already concluded the trial court reasonably exercised its discretion when it excluded evidence of the Krueger sale as a comparable sale. For the same reasons, the trial court reasonably exercised its discretion when it excluded additional evidence involving the Krueger sale.

## C. Admission of the County's Expert Testimony

The Calaways argue the trial court erroneously exercised its discretion when it allowed the County's real estate appraiser expert to testify. We note that the Calaways devoted only a few lines of their forty-eight-page brief to this argument, stating, "For the reasons already stated in Argument #1 of this Brief, that decision was in error and that error was prejudicial to the Calaways' case." Because the Calaways unreasonably expect this court to select and apply cases and arguments from their brief's earlier sections, we conclude the issue is inadequately briefed and therefore decline

to review it. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992) (court of appeals may decline to review an issue inadequately briefed).

## III. THE COUNTY'S CROSS-APPEAL

The County raises three issues on its cross-appeal, arguing: (1) it is entitled to costs and disbursements; (2) it should have received twelve percent rather than five percent postjudgment interest; and (3) it should be reimbursed for an undisclosed special assessment on the condemned property. We examine each issue in turn.

### A. Costs and Disbursements

The County argues that as the successful party, it is entitled to costs and disbursements, pursuant to § 32.28, STATS., and ch. 814, STATS. Whether the County is entitled to costs involves the interpretation and application of statutes to undisputed facts, a question of law that we review independently of the trial court's determinations. *See Dorschner v. DOT*, 183 Wis. 2d 236, 239, 515 N.W.2d 311, 312 (Ct. App. 1994).

The County's argument is based on § 32.28(2), STATS., which provides in relevant part:

> (2) Except as provided in sub. (3),[2] costs shall be allowed under ch. 814 in any action brought under this chapter. If the amount of just compensation found by the court or commissioners of condemnation exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer,

---

[2] Section 32.28(3), STATS., provides a variety of circumstances under which the trial court shall award the condemnee actual litigation expenses in lieu of costs under ch. 814, STATS.

the condemnee shall be deemed the successful party under s. 814.02(2).

There are two questions that must be answered to determine whether the County is entitled to costs: (1) does the costs provision of § 32.28(2) apply to both condemnors and condemnees, and (2) if it does, under which section of ch. 814, STATS., can the condemnor recover?

First, we conclude that § 32.28(2), STATS., unambiguously provides that in eminent domain proceedings, costs shall be allowed under ch. 814, STATS. We are not convinced by the Calaways' argument that because the legislature in § 32.28(3), STATS., provided that condemnees can receive litigation expenses under specified circumstances, § 32.28, STATS., was designed to allow only condemnees to recover costs. We read § 32.28 as providing that either party can receive costs pursuant to ch. 814, and that the condemnee can receive actual costs if certain conditions exist.[3]

---

[3] Our conclusion is consistent with the fact that before the legislature amended ch. 32, STATS., in 1977 and created § 32.28, STATS., to govern costs issues for the entire chapter, individual sections provided that either the condemnor or condemnee could recover costs. *See, e.g.,* § 32.05(10)(b), STATS., 1975, ("Costs shall be allowed pursuant to s. 814.02(2)[, STATS., 1975]."); § 32.05(11)(a), STATS., 1975, (condemnor entitled to taxable statutory costs and disbursements pursuant to § 814.02(2)); § 32.05 (11)(b), STATS., 1975, (condemnee entitled to statutory taxable costs and disbursements pursuant to § 814.02(2)). When the legislature in 1977 repealed the language in § 32.05(10)(b) and 32.05(11)(a) and (b) that referenced costs, the legislative council noted that the repealed language allowed statutory costs to be taxed against the unsuccessful party upon appeal of a condemnation commission's award to the circuit court, under § 32.05

752

Next, we must look to ch. 814, STATS., to determine which section governs costs for condemnors. The County argues that it should receive costs under § 814.03(1), STATS., which provides: "If the Plaintiff is not entitled to costs under s. 814.01 (1) or (3), the defendant shall be allowed costs to be computed on the basis of the demands of the complaint."

Alternatively, the County argues the omnibus costs provision, § 814.036, STATS.,[4] which the trial court concluded was the appropriate statute to apply, is a basis upon which the trial court may, in its discretion, award costs. The County argues the trial court erroneously exercised its discretion when it denied the County costs; the Calaways argue the trial court's exercise of discretion was reasonable.

A third potentially applicable statute not identified by either party is § 814.02(2), STATS., which provides:

> In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the court may award to the successful party such costs (exclusive of disbursements) not exceeding $100, as the court deems reasonable and just, in view of the nature of the case and the work

(10)(b), and upon appeal of the condemnor's basic award to the circuit court, under § 32.05(11)(a) and (b). The council noted that the new § 32.28(2), STATS., 1977, preserves these rules, while the new § 32.28(3) allows full recovery of the condemnee's litigation expenses in certain circumstances. 1977 A.B. 1077, Legislative Council Notes.

[4] Section 814.036, STATS., provides: "**Omnibus costs provision**. If a situation arises in which the allowance of costs is not covered by ss. 814.01 to 814.035, the allowance shall be in the discretion of the court."

involved. This subsection refers only to such costs and fees as may be taxed by the authority of the statutes, independent of any contract of the parties upon the subject, which contract shall apply unless the court finds that the provisions thereof are inequitable or unjust.

We conclude § 814.02(2), STATS., is the appropriate section to apply for several reasons. First, § 814.02(2) explicitly applies to special proceedings. The eminent domain proceeding is a special proceeding. *Martineau v. State Conservation Comm'n,* 66 Wis. 2d 439, 446, 225 N.W.2d 613, 616 (1975). Second, § 32.28(2), STATS., explains the circumstances under which a condemnee is a "successful party" under § 814.02(2). The logical reason the legislature included this information in § 32.28(2) was to guide trial courts as they applied § 814.02(2). Finally, our conclusion is consistent with the statutes that governed costs prior to the 1977 creation of § 32.28, STATS. These prior statutes explicitly provided that costs were allowed pursuant to § 814.02(2). *See* § 32.05(10)(b) and 32.05(11)(a) and (b), STATS., 1975. We have found no evidence in the legislative history of § 32.28 that suggests the legislature intended for a different section of ch. 814, STATS., to guide the assessment of costs in condemnation cases.

Having concluded the County is entitled to seek costs under §§ 32.28(2) and 814.02(2), STATS., we must examine whether the trial court appropriately denied costs. Under § 814.02(2), the trial court may, in its discretion, award the successful party costs not exceeding $100. In its written decision, the trial court concluded, "By the court's discretion, the County is denied costs and disbursements." The trial court did not give any reasons for its exercise of discretion and, thus, we reluctantly reverse and remand the case on this issue

754

so the trial court can articulate the reasons supporting its exercise of discretion. *See Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547, 551-52 (1983) (the court acts in excess of its discretion if it fails to state why and how it made its decision).

## B. Postjudgment Interest

The parties do not dispute that the County is entitled to prejudgment interest at the rate of five percent. At issue is whether the postjudgment interest rate should be the legal rate of five percent, or twelve percent as provided in § 815.05(8), STATS.[5] The County argues it is entitled to postjudgment interest at the rate of twelve percent. The Calaways argue the rate should be five percent. This issue involves the interpretation of several statutes to undisputed facts, a question of law that we review independently of the trial court's determinations. *See Dorschner*, 183 Wis. 2d at 239, 515 N.W.2d at 312 .

It is undisputed that because the Calaways appealed the commission's award to the circuit court, § 32.05(10), STATS., governs this situation. Section 32.05(10) provides in relevant part:

> (b) The court shall enter judgment for the amount found to be due after giving effect to any amount paid by reason of a prior award. The judgment shall include legal interest on the amount so found due from the date of taking if judgment is for the condemnor, and from 14 days after the date of taking if judgment is for the condemnee.

[5] Section 815.05(8), STATS., provides: "Except as provided in s. 807.01(4), every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year on the amount recovered from the date of the entry thereof until paid."

Under § 32.05(10)(b), STATS., the prevailing party is entitled to prejudgment legal interest. The term legal interest refers to § 138.04, STATS., which indicates the legal rate of interest is five percent. *See Milwaukee & Suburban Transp. Corp. v. Milwaukee County*, 82 Wis. 2d 420, 452, 263 N.W.2d 503, 520 (1978) (term "legal interest" in § 32.05(11)(b), STATS., refers to interest at the legal rate of five percent, as provided by § 138.04); § 138.04, STATS.

In *Burlington Northern R.R. v. City of Superior*, 159 Wis. 2d 434, 441, 464 N.W.2d 643, 646 (1991), our supreme court held that § 815.05(8), STATS., establishes the postjudgment interest rate for every judgment for which the legislature has not explicitly provided a different postjudgment interest rate. Thus, whether the Calaways must pay twelve percent postjudgment interest depends on whether § 32.05(10)(b), STATS., explicitly provides a different postjudgment interest rate. We conclude § 32.05(10)(b) does not explicitly provide a different postjudgment interest rate and, therefore, the County is entitled to postjudgment interest at the rate of twelve percent.

The Calaways agree that § 32.05(10)(b), STATS., is silent as to the end date of the running of the interest. They also note that various provisions of § 32.05, STATS., are poorly drafted, because the legislature used different words in sections that govern similar situations. However, they argue that the clear thrust of the statutory scheme is that interest is to run, regardless of which side wins, from the date of taking to the date of payment in full at the legal rate of interest. The Calaways' argument is based in large part on § 32.05(11)(b), STATS., which explicitly provides that if the property owner is successful, he or she shall have judgment plus legal interest "to date of payment in

full." Our supreme court has held that this section requires the payment of postjudgment interest at the legal rate of five percent. *Milwaukee & Suburban Transp.*, 82 Wis. 2d at 452, 263 N.W.2d at 520.

We disagree that the explicit language of § 32.05(11)(b), STATS., can be applied to all of § 32.05. When the legislature amends a statute, § 32.05(11)(b) in this case, it is presumed to have full knowledge of existing statutes. *See Murphy v. LIRC*, 183 Wis. 2d 205, 218, 515 N.W.2d 487, 493 (Ct. App. 1994). We note that prior to 1967, § 32.05(11)(b) contained language similar to that found in the current versions of § 32.05(10)(b) and 32.05(11)(a), STATS., providing that the condemnee would have judgment plus "legal interest thereon to date of entry of judgment." Section 32.05(11)(b), STATS., 1965. Then, in 1967, a bill was introduced in the legislature that would have specifically amended § 32.05(10)(b) and 32.05(11)(b) to include the phrase "legal interest thereon to date of payment in full." *See* 1967 S.B. 467. For reasons not apparent in the legislative history, the bill was amended so that only changes to § 32.05(11)(b) were eventually passed. *See* ch. 331, Laws of 1967.

We are unconvinced that where the legislature considered amending several sections and ultimately amended only one of the statutes dealing with the same issue, it somehow intended its amendment to § 32.05(11)(b), STATS., to apply to all of § 32.05, STATS. Instead, we must presume the legislature was aware of other provisions in § 32.05 that also dealt with interest awards, *see Murphy*, 183 Wis. 2d at 218, 515 N.W.2d at 493, and, for reasons unknown to this court, chose not to amend those statutes. Furthermore, where the legislature uses similar but different terms in a statute, particularly within the same section, we must presume

it intended those terms to have different, distinct meanings. *American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791, 798 (Ct. App. 1994). Therefore, we presume that where the legislature used a unique phrase within § 32.05(11)(b) (*i.e.*, "to date of payment in full"), it intended that phrase to have a meaning different from other words in § 32.05 that are used to address interest.

■

Thus, it appears from the legislative history that the legislature intended to provide that judgments under § 32.05(11)(b), STATS., would include recovery at five percent, the legal rate of interest, for both prejudgment and postjudgment interest. Because the legislature specifically chose not to amend § 32.05(10)(b), STATS., and because this statute remains silent as to the rate of postjudgment interest, this court has no alternative but to apply the postjudgment rate of interest established by § 815.05(8), STATS. *See Burlington*, 159 Wis. 2d at 441, 464 N.W.2d at 646 (§ 815.05(8) establishes the postjudgment interest rate for every judgment for which the legislature has not explicitly provided a different postjudgment interest rate). We recognize that our conclusion means condemnees will earn different rates of postjudgment interest, depending on whether they proceed under § 32.05(10) or 32.05(11), STATS. The difference in the statutes is the result of the legislature's unambiguous choice to amend only one of the sections relating to interest. *See* ch. 331, Laws of 1967. If the parties believe there should be a uniform rate of postjudgment interest for all condemnation cases, they must look to the legislature for relief. It is not the function of this court to rewrite the statute.

For these reasons, we conclude the trial court erred when it awarded the County only five percent postjudgment interest. The County is entitled to postjudgment interest at the rate of twelve percent, as provided in § 815.05(8), STATS.

## C. The Special Assessment

The County argues the Calaways should have to pay $20,000 to satisfy an undisclosed special assessment on the condemned property. It is undisputed that the local sanitary district installed sewers on the Calaways' property shortly before the taking and levied a special assessment against the property for $23,342, which was to be paid in ten annual installments. The County states that at the closing, for reasons unknown, it mistook the first annual payment of $3,221.72 (which was then due) as the entire special assessment, and deducted it from the basic award in the closing statement. The County argues, "The plaintiffs said nothing about this, even though they knew the closing documents were inaccurate." Ultimately, the County paid the sanitary district over $20,000 and now seeks reimbursement from the Calaways.

The County argues the issue presented is the determination of the Calaways' legal duty to notify the County that the County's title search had failed to identify the entire special assessment. However, the Calaways' knowledge of or alleged duty to notify the County is not relevant to the issue presented. We conclude that where it is undisputed that there is an unpaid special assessment on the condemned property that was not discovered at the time of the basic award, the trial court must, upon motion by the condemnor in a condemnation action, order the condemnees to reim-

burse the condemnor for any additional special assessments the condemnor had to pay. This will rectify the situation where the condemnor pays the full value of the land and thereafter is forced to pay again to holders of special assessments on the land when the special assessments become due.

Our reasoning is based on the undisputed facts of this case. The Calaways do not dispute that the County rightfully deducted from the basic award the cost of the special assessment against the property, which the County mistakenly identified as $3,221 and paid to the sanitary district. Additionally, the Calaways do not dispute that the actual special assessment against their property was over $20,000, to be paid in installments over ten years. Thus, the only argument the Calaways make is that the County negligently failed to find the full assessment and to deduct the assessment from the basic award and, therefore, they are entitled to keep the money. In other words, the Calaways believe they are entitled to recover twice, by receiving the full value of their property and payment of the assessment on their property. We do not agree.

The County as condemnor is entitled to a clear, unencumbered title to the Calaways' property. Toward this end, the County paid the special assessment, as well as delinquent taxes on the property, and deducted the payments from the basic award. Where the County, after paying the basic award, identifies an additional, undisputed special assessment against the property and asks the trial court in the course of a condemnation action to order the condemnees to reimburse the condemnor for the special assessment, the trial court is required to grant such a motion. Therefore, we reverse the trial court's order denying the County reimbursement for the special assessment and remand the case

with directions that the trial court enter an order directing the Calaways to pay the difference between the entire special assessment the County paid and that portion of the special assessment that was already deducted from the basic award.

## IV. CONCLUSION

In sum, we conclude the trial court reasonably exercised its discretion when it excluded and admitted evidence at trial and, therefore, the Calaways are not entitled to a new trial. However, we reverse the trial court's decision to deny the County twelve percent postjudgment interest and reimbursement for the special assessment it paid. We also reverse the trial court's denial of costs because it did not articulate the reasons for its exercise of discretion. We remand the case with directions that the trial court order the Calaways to reimburse the County for the special assessment and articulate the reasons for its exercise of discretion on the issue of whether to award costs to the County.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.