WEILAND and others, Respondents, v. DEPARTMENT OF
TRANSPORTATION (Division of Highways), Appellant.

*No. 325. Argued February 5, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 455.)

458

For the appellant the cause was argued by *E. Gordon Young,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents there was a brief by *Callahan, Arnold & Stoltz* of Columbus, and oral argument by *Carroll B. Callahan.*

BEILFUSS, J. Three issues have been raised by the parties. The plaintiffs-respondents contend the appeal should be dismissed because it was not timely taken. The state contends it is entitled to an offset of $5,000 and that the plaintiffs are not entitled to seven percent interest after verdict.

The plaintiffs-respondents argue that because no appeal was taken within the time prescribed in sec. 32.05

(11) (c), Stats. 1969, this court should not entertain this appeal until after the judgment has been paid.

Sec. 32.05 (11) (c), Stats. 1969, provides:

"All moneys payable under this subsection shall be paid within 60 days after entry of judgment unless within such period an appeal is taken to the supreme court."

Judgment was entered in this case on September 15, 1972. Service was admitted on notice of entry of judgment by appellant on September 18, 1972. The state filed its notice of appeal on January 16, 1973, and an amendatory notice of appeal on February 8, 1973, superseding the January 16th notice. Thus the appeal was not taken within sixty days after entry of judgment.

Sec. 32.05 (13), Stats. 1969, however, provides:

"APPEAL TO SUPREME COURT. Either party may appeal to the supreme court within 6 months after date of notice of entry of circuit court judgment."

It is our opinion that sec. 32.05 (11) (c), Stats. 1969, does not affect the time in which an appeal may be taken from the judgment of the circuit court. Rather, it sets forth the time within which a party seeking to withhold payment of the judgment pending the outcome of the appeal must file its appeal. Applying the law to the facts of this case, the appeal was timely filed and should not be dismissed. However, the state has waived its right to withhold payment pending the outcome of the appeal. The fact that payment is due (in fact it is overdue) does not affect the jurisdiction of this court. In any event, the appeal here is not from the judgment but from orders subsequent to the judgment.

At what rate or rates should the interest be computed?

The trial court's order on this issue was as follows:

"IT IS ORDERED AND ADJUDGED: That the State of Wisconsin is liable for interest at 5% from the date of the taking of plaintiffs' property to the date of the verdict

and thereafter is liable for interest at the rate of 7%
until payment of the amount due plaintiffs is made."

Sec. 32.05 (11) (b), Stats. 1969, provides:

"If the jury verdict as approved by the court exceeds
the basic award, the appellant shall have judgment for
the amount of such excess plus legal interest thereon to
date of payment in full from that date which is 14 days
after the date of taking, plus his statutory taxable costs
and disbursements pursuant to s. 271.02 (2)."

Sec. 138.04, Stats. 1969, provides:

"**Legal rate.** The rate of interest upon the loan or
forbearance of any money, goods or things in action shall
be $5 upon the $100 for one year and according to that
rate for a greater or less sum or for a longer or a shorter
time; but parties may contract for the payment and
receipt of a rate of interest not exceeding the rate allowed
in s. 138.05, in which case such rate shall be clearly
expressed in writing."

The legal rate is five percent.

The plaintiffs-respondents contend that sec. 271.04 (4),
Stats. 1971, governs the rate of interest after verdict.
Sec. 271.04 (4) provides:

"INTEREST ON VERDICT. When the judgment is for the
recovery of money, interest at the rate of 7% per annum
from the time of verdict, decision or report until judg-
ment is entered shall be computed by the clerk and added
to the costs."

The plaintiffs-respondents argue that sec. 271.04 (4),
Stats., deals with a specific subject, *i.e.*, payment of in-
terest on verdicts, and that although sec. 32.05 (11) (b)
and sec. 138.04 are specific statutes, that sec. 271.04 (4)
should govern because it is later in time. *State ex rel.
Mitchell v. Superior Court* (1961), 14 Wis. 2d 77, 109
N. W. 2d 522.

Although sec. 271.04 (4), Stats., deals with a specific
subject, it applies generally to all verdicts. Therefore it

is a general statute relating to interest. Sec. 32.05 (11) (b), however, deals with a specific subject, *i.e.,* interest, and in a specific area, *i.e.,* eminent domain. By its terms it is dependent upon a verdict and applies until the judgment is paid in full. Therefore, sec. 32.05 (11) (b) is a specific statute relating to interest. It is a well-established rule that ". . . the specific statute controls when a specific statute and a general statute relate to the same subject matter." *Kramer v. Hayward* (1973), 57 Wis. 2d 302, 311, 203 N. W. 2d 871.

The circuit court's order of February 5, 1973, ordering the payment of interest should be modified so as to comply with secs. 32.05 (11) (b) and 138.04, Stats. The state should be ordered to pay interest at five percent on the excess of judgment over the basic award from fourteen days after date of taking until the date of payment in full.

Is the $5,000 supplemental reimbursement that was previously paid to plaintiffs-respondents subject to set-off?

Appellant claims the right to set off the $5,000 replacement housing payment paid prior to trial under sec. 32.19 (3) (b) 3 a, Stats. 1969. Sec. 32.19 (3) (b) 3 a provides:

"In addition to amounts otherwise authorized by this chapter, the condemnor shall make a payment to the owner of real property acquired for a project which is improved by a single, 2-family or 3-family dwelling actually owned and occupied by the owner for not less than one year prior to the initiation of the attempt to purchase such property. Such payment, not to exceed $5,000, shall be the amount which, when added to the acquisition payment, equals the average price required for a comparable dwelling as determined by the department of local affairs and development and the department of industry, labor and human relations, jointly, to be a decent, safe and sanitary dwelling adequate to accommodate the displaced owner, reasonably accessible to

public services and places of employment and available on the private market. Such payment shall be made only to a displaced owner who purchases and occupies a decent, safe and sanitary dwelling within one year subsequent to the date on which he moves from the dwelling acquired for the project."

The purpose of the payment of $5,000 under this statute was to compensate the plaintiffs-respondents for the difference between the "acquisition payment" ($39,000) and the average price for a comparable dwelling in the area. The "acquisition payment" is the condemnor's determination of the "fair market value" of the property taken. *See* sec. 32.09, Stats. The judgment was based on the fair market value of the property as determined by the jury. Therefore the verdict and the judgment were only reevaluations of the fair market value of the property taken. It is possible that the increased fair market value of the property taken, as arrived at by the jury, could still be less than the average price for a comparable dwelling in that area. That is a question of fact to be determined upon competent evidence.

During the trial no issue was raised and no evidence offered by the state. The trial court indicated that because the fair market value of the property was considerably increased by the jury finding that the state may be entitled to all or part of the $5,000 paid as replacement housing expense, but because no evidence was offered no finding could be made. We believe the trial court was correct and that no offset could be allowed under the state of the record.[1]

The state takes the position that because of the increase in the award by virtue of the jury verdict that the re-

[1] As a part of its motions after verdict the state attempted to supplement the record by offering records and computations of the department of local affairs. It allowed them to be filed but refused to receive them as evidence and we believe correctly so.

placement housing award should be recouped by the state by means of an offset and that if the plaintiffs-respondents believe they are entitled to a replacement housing payment they should have the burden to proceed. It suggests such remedies as a writ of mandamus, declaratory judgment and petition to the state claims board.

In this case the state paid the replacement housing cost of $5,000 to the plaintiffs-respondents without any condition or agreement to repay all or any portion in the event the eventual award of damages was increased by the jury. Under these facts, if the state believes the plaintiffs-respondents have been overpaid for the replacement housing as provided by statute, it should have the burden to establish that fact by remedies available to it.

*By the Court.*—The order of December 29, 1972, is affirmed; the order of January 30, 1973, is modified and the matter remanded with directions to enter judgment pursuant to this opinion.